# EXHIBIT 3

**SETTLEMENT AGREEMENT BETWEEN THE UNITED STATES AND INVENERGY NE OFFSHORE WIND LLC**

This Settlement Agreement ("**Agreement**") is entered into as this 12th day of June, 2026 by and between the United States of America, acting through the United States Department of the Interior ("**DOI**"), and the United States Department of Justice ("**DOJ**" and collectively with the DOI, the "**United States**") and Invenergy NE Offshore Wind LLC ("**Invenergy**," and collectively, with the United States, the "**Parties**").

**WHEREAS,** on October 29, 2024, DOI, acting through the Bureau of Ocean Energy Management ("**BOEM**"), held a lease sale under 43 U.S.C. § 1337(p) of the Outer Continental Shelf Lands Act ("**OCSLA**") for offshore wind energy development of 117,780 acres in the Gulf of Maine lease area;

**WHEREAS,** the winning bidder for Lease No. OCS-A 0567 was Invenergy NE Offshore Wind LLC;

**WHEREAS,** Invenergy NE Offshore Wind LLC successfully bid a $4,416,750 bonus bid for Lease No. OCS-A 0567 and deposited that amount into the United States Treasury, through DOI's Office of Natural Resources Revenue ("**ONRR**");

**WHEREAS**, BOEM fully executed Lease No. OCS-A 0567 with Invenergy NE Offshore Wind LLC with an effective date of December 1, 2024;

**WHEREAS**, Invenergy NE Offshore Wind LLC subsequently paid BOEM $706,680 in annual Lease payments and expended $166,798.85 for preliminary project development activities in support of the obligations under Lease No. OCS-A 0567;

**WHEREAS,** no construction activities have been undertaken on Lease No. OCS-A 0567 and Lease No. OCS-A 0567 has not been developed beyond the preliminary project development activities referenced above;

**WHEREAS**, BOEM and Invenergy NE Offshore Wind LLC later amended Lease No. OCS-A 0567 on January 16, 2025;

**WHEREAS,** Invenergy NE Offshore Wind LLC currently owns Lease No. OCS-A 0567;

**WHEREAS,** Invenergy NE Offshore Wind LLC forgoes the five-year suspension period set forth in 43 U.S.C. § 1334(a)(2)(B) and requests that Lease No. OCS-A 0567 be cancelled in accordance with the terms in this Agreement;

**WHEREAS,** the Department of War has raised classified national security concerns about development of offshore leases that were not known to BOEM at the time of lease issuance and that may have prevented the lease issuance if they had been considered;

**WHEREAS,** if this offshore wind project would have continued, BOEM would have issued to Invenergy NE Offshore Wind LLC an order to suspend construction and operations of this project indefinitely due to national security issues, similar to the suspension order issued by BOEM to five other offshore wind projects on December 22, 2025;

**WHEREAS,** Invenergy NE Offshore Wind LLC could have claimed breach of contract in the event that such a suspension order was received and filed suit in the United States Court of Federal Claims;

**WHEREAS**, DOI has determined that cancelling Lease No. OCS-A 0567 is in the public interest because it will bring certainty to the status of Lease No. OCS-A 0567 and assist in preventing a national security threat;

**WHEREAS**, the United States has obtained the written approval of the authorized representative of the United States Acting Attorney General that pursuant to 28 U.S.C. § 2414, it is in the interest of the United States Department of Justice to authorize payment of a settlement amount of up to $4,416,750 via the Judgment Fund Branch at the United States Department of the Treasury's Bureau of the Fiscal Service to settle the potential lawsuit referenced above as a

compromise to avoid imminent litigation;

**WHEREAS,** the Parties desire to set forth the terms of their Agreement in writing.

**NOW THEREFORE,** in consideration of the mutual agreements, covenants, representations, warranties and releases set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. The Parties agree to the following definitions for the purposes of this Agreement:

A. The "**United States of America**" and/or "United States" shall be inclusive of DOJ, DOI, BOEM, ONRR, and including any and all agencies, officers, and employees therein.

B. "**Affiliate**" means any entity (including without limitation any corporation, company, partnership, limited liability company or group) that directly or indirectly through one or more intermediaries is controlled by Invenergy Investment Company LLC.

C. "**Eligible Expenditures**" means all and any amounts expended by Invenergy or any of its Affiliates for the development of Conventional Energy Projects in the United States, either through the direct payment of capital expenditures ("CAPEX") or through an equity contribution cash call made for the benefit of an entity, such entity thereafter applying the funds or security toward the development of a Conventional Energy Project in the United States.

D. "**Conventional Energy Projects**" means any investment in (i) oil & gas production, gathering, transportation, processing, storage or refining, (ii) liquefied natural gas, (iii) generation or transmission of non-renewable based electricity (including for the sake of clarity using natural gas combustion turbines in simple or

combined cycle) (iv) tank farms; (v) geothermal power projects, and, (vi) any infrastructures related to (i) – (v).

2. Invenergy agrees that Invenergy or its Affiliates shall make Eligible Expenditures in the amount of up to $4,416,750 on Conventional Energy Projects within the United States between January 1, 2026 and December 31, 2026. The settlement amount shall equal the amount of Eligible Expenditures made by Invenergy or its Affiliates in 2026 of up to $4,416,750 ("**Settlement Amount**"). Any shortfall in Invenergy's ability to make Eligible Expenditures in the full amount set forth in Paragraph 2 by December 31, 2026 shall not be deemed a breach by Invenergy of this Agreement nor a waiver of the DOI's obligation to request payment from the Judgment Fund for any such Eligible Expenditures submitted by Invenergy. Any Eligible Expenditures counted under this Agreement will not count towards Eligible Expenditures in settlement agreements for other offshore wind leases.

3. Invenergy will provide an unqualified accounting audit report by a third party and any supporting documentation (in the form of bank statements, receipts, invoices, filings or any other valid proof collectively, the "**Expenditure Support**") to the DOI's Assistant Secretary – Policy, Management, and Budget verifying that it has made Eligible Expenditures that satisfy the condition in Paragraph 2 ("**Expenditure Submission Date**"). DOI will assess the sufficiency of this documentation within five (5) business days of the Expenditure Submission Date. Invenergy will maintain all documentation relating to Eligible Expenditures for a period of three years during which DOI will have the right to request that documentation.

4. Within five (5) business days of DOI's determination of the sufficiency of the documentation in Paragraph 3, the United States will submit a request for payment of the Settlement Amount to the Judgment Fund Branch at the United States Department of the Treasury's Bureau of the Fiscal Service and the United States shall issue such payment from the Judgment

Fund within sixty (60) calendar days unless otherwise extended by mutual agreement of the Parties to this Agreement. Upon payment of the Settlement Amount by the Judgment Fund, Lease No. OCS-A 0567 shall be cancelled, effective immediately, and DOI will inform ONRR of the same.

5. To the extent Invenergy does not receive payment of the Settlement Amount within sixty (60) calendar days of the submission of request for payment, or within an extended time agreed upon as provided by Paragraph 4, Invenergy retains the right to bring any and all claims available to it under the law.

6. Covenant Not to Sue. Except as necessary to enforce this Agreement, and unless set forth otherwise in this Agreement, the United States and Invenergy agree that they will not bring, commence, institute, prosecute, or maintain any action at law, proceeding in equity, or any other claims for damages or any other relief whatsoever that relates to, arises from, or is based, in whole or in part, on Lease No. OCS-A 0567 after payment of the Settlement Amount set forth in Paragraph 4.

7. Release and Discharge. Upon the payment of the Settlement Amount set forth in Paragraph 4, each Party hereby releases and discharges the other Party from any and all claims, causes of action, liability, and damages, whether known or unknown, of any nature or type, that such Party has or may have against the other Party arising out of or in relation to Lease No. OCS-A 0567 or this Agreement, however, the United States reserves any claim based upon fraud.

8. No Admissions. Except as otherwise expressly stated herein, nothing in this Agreement constitutes an admission of any fact, or an admission of any liability, by the United States or Invenergy.

9. Public Disclosure and Non-Disclosure of Certain Information. The United States and Invenergy consent to the disclosure of this Agreement to the public, provided however, that neither the United States nor Invenergy shall make any public announcement regarding this

Agreement without review and consultation with the other Party as to the text of such announcement. Each Party shall keep confidential any non-public information with respect to the other Party that was exchanged as part of the requirements of this Agreement including but not limited to any Expenditure Support (collectively, the "**Confidential Information**"). Upon receipt of any Freedom of Information Act request for Confidential Information related to the Agreement, the United States shall promptly notify Invenergy and the Parties shall cooperate in good faith to prepare mutually acceptable redactions authorized under applicable laws prior to any release of such Confidential Information.

10. Voluntary Agreement/Advice of Counsel. The United States and Invenergy agree and declare that they have voluntarily agreed to this Agreement of their own free will and accord, acting upon their own volition, and after consulting with their legal counsel and advisors and without any degree of duress or compulsion.

11. Legal Fees. The United States and Invenergy will bear their own legal fees and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

12. Disclaimer of Reliance. Except as contained in this Agreement, the United States and Invenergy expressly disclaim reliance upon any facts, promises, undertakings or representations made by any other Party, any other Party's representative, or any other Party's attorney in the execution of this Agreement.

13. Consideration. The United States and Invenergy acknowledge that the provisions of this Agreement provide mutually sufficient consideration for this Agreement and its enforcement.

14. Binding Effect. This Agreement is binding on each Party and their successors, transferees, heirs, and assigns.

15. Entire Agreement/Merger and Modification. This Agreement constitutes the complete agreement between the United States and Invenergy, and supersedes all prior and contemporaneous agreements, understandings, negotiations, and discussions among the United States and Invenergy, whether oral or written, with respect to Lease No. OCS-A 0567. This Agreement may not be amended or rescinded except by mutual written consent of all the Parties.

16. No Third-Party Beneficiaries. This Agreement is intended to be for the benefit of the Parties only. Except for Invenergy, and as otherwise expressly stated herein, this Agreement is not intended to confer upon any person who is not a Party hereto any rights or remedies hereunder, and no person other than the Parties hereto is entitled to rely on any representation, covenant, or agreement contained herein.

17. Laws, Jurisdiction, & Venue. This Agreement is governed by the laws of the United States. For purposes of construing this Agreement, this Agreement is deemed to have been drafted by both Parties to this Agreement and is not, therefore, to be construed against the United States or Invenergy for that reason in any subsequent dispute. The Parties agree that the appropriate United States court shall have exclusive jurisdiction over any action, suit, or proceeding arising out of or relating to this Agreement.

18. Enforceability. This Agreement must be signed by each and every Party to be enforceable against any Party. This Agreement is effective on the date of signature of the last signatory to the Agreement.

19. No Admission of Liability. The United States and Invenergy specifically deny any liability related to Lease No. OCS-A 0567. Further, subject to the execution and performance of the Agreement, Invenergy agrees that no liability or damages are attributable to the United States as the result of Lease No. OCS-A 0567, this Agreement, and/or the actions taken by the United States pursuant to this Agreement. This Agreement is being made purely upon a cooperative basis

by the United States and Invenergy to address certain matters identified hereto, and this Agreement, and/or any performance under this Agreement pursuant hereto, is not allowed to be used as evidence of liability of the United States and/or Invenergy in any suit or suits, claims, causes of action, or in any public comment whatsoever, except as necessary to enforce this Agreement.

20. Authority. The undersigned represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

21. Non-Appropriation. Nothing in this Agreement may be construed to commit a federal agency or official to expend funds not appropriated by Congress. Nothing in this Agreement may be interpreted as a commitment or requirement that DOI obligate funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable law or regulation.

22. Counterpart Execution. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

23. Fulfillment. This Agreement will be considered fulfilled when Lease No. OCS-A 0567 has been cancelled and the United States has paid the Settlement Amount to Invenergy or its designees under this Agreement.

[Three signature pages follow.]

**UNITED STATES DEPARTMENT OF THE INTERIOR**

Doug Burgum
Secretary of the Interior

Date: 6-12-26

**UNITED STATES DEPARTMENT OF JUSTICE**

________________________________

Stanley Woodward
Associate Attorney General

Date: 06.12.26

**INVENERGY NE OFFSHORE WIND LLC**
**By Invenergy LLC, its Manager**

______________________________
Daniel Runyan
Vice President

Date: 6/12/2024